# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVID GONZALES,

     Plaintiff,

v.                                                    Civ. No. 16-1045 MCA/GBW

BERNALILLO COUNTY SHERIFF'S
DEPARTMENT and J. GARCIA,

     Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on the parties' competing Motions for

Summary Judgment (*docs. 23, 29*).  Having reviewed the Martinez Report (*doc. 22*) and

all other pertinent briefing (*docs. 14, 15, 27, 28*), I recommend the Court GRANT

Defendants' Motion for Summary Judgment (*doc. 23*).  I further recommend the Court

DENY Plaintiff's Motion to Reinstate Default Judgment (*doc. 14*), Motion to Remand

(*doc. 15*), and Motion for Summary Judgment (*doc. 29*).

### I.    BACKGROUND

Plaintiff initiated this action due to the circumstances surrounding his arrest,

which took place on January 6, 2015.  *Doc. 1-1* at 2; *doc. 22* at 1.  Plaintiff was arrested

following a search of his home that was conducted pursuant to a search warrant by the

Bernalillo County Sheriff's Office.  *Doc. 22* at 2.

Plaintiff, a *pro se* inmate, filed suit in the Second Judicial District Court of New Mexico on October 28, 2015. *Doc. 1-1.* Plaintiff's Complaint states that it is a tort suit brought pursuant to the New Mexico Tort Claims Act (NMTCA). *Id.* at 1. Plaintiff also alleges constitutional violations arising under the Fourth, Fifth, and Fourteenth Amendments as a result of the search of his home. *Id.* at 2.

Following a complicated procedural history in state court, discussed in-depth below, Defendants removed this action on September 21, 2016. *See doc. 1.* Because Plaintiff is a *pro se* inmate, Defendants filed a Martinez Report in lieu of formal discovery on December 9, 2016. *Doc. 22.* Concurrently therewith, Defendants filed a motion seeking summary judgment, arguing that: (1) Plaintiff's federal claims against Defendant Detective J. Garcia in his individual capacity should be dismissed on the basis of qualified immunity; (2) Plaintiff's federal claims against Defendant Bernalillo County Sheriff's Department should be dismissed because Plaintiff failed to plead facts showing Defendants violated his constitutional rights; and (3) Plaintiff's state claim against Defendant Garcia should be dismissed because Plaintiff failed to comply with the NMTCA's notice requirements. *See generally doc. 23.*

## II.    PLAINTIFF'S RECONSIDERATION AND REMAND MOTIONS

Plaintiff initially filed his Complaint in the Second Judicial District Court of New Mexico. *See docs. 1-1, 7-1.* On June 30, 2016, that state court granted Plaintiff's Motion for Default Judgment following Defendants' failure to file any responsive pleading to

2

Plaintiff's Complaint or to appear at a hearing in the matter.  *See doc. 7-1* at 31-33.  The court then set aside the default judgment upon motion by Defendants on September 2, 2016.  *Id.* at 58-60.  Because Plaintiff's Complaint asserted numerous constitutional claims, Defendants removed the action to this Court on September 21, 2016.  *See doc. 1.* Since removal, Plaintiff has made numerous filings averring that the default judgment should not have been set aside by the state court below.  *See docs. 14, 15, 27, 28, 29.* Specifically, on October 27, 2016, Plaintiff filed both a Motion to Remand (*doc. 15*) and a motion asking the Court to deny Defendants' motion to set aside the default judgment, which was already granted by the state court (*doc. 14*).  Plaintiff reiterates the arguments underlying these motions in later filings (*docs. 27, 28, 29*).

Under the *Rooker-Feldman* doctrine, a federal court—other than the Supreme Court—has no jurisdiction to review any final judgment of a state court.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 486 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923).  Essentially, the doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  However, "the *Rooker-Feldman* doctrine is confined to cases brought after the state proceedings have ended."  *Mann v. Boatright*, 477 F.3d 1140, 1146 (10th Cir. 2007) (internal quotations omitted).  Thus, the doctrine does not apply in the present matter,

3

as the state court proceedings had only just begun when this matter was removed.  *Doc.*

*1-1.  See Jenkins v. MTGLQ Investors*, 218 F. App'x 719, 724 (10th Cir. 2007) (unpublished)

("[T]he *Rooker-Feldman* doctrine has no application to a properly removed case

where . . . there is no attack on a separate and final state court judgment."); *see also*

*Persley v. Lee*, 794 F. Supp. 2d 728, 732 (E.D. Ky. 2011) (finding the *Rooker-Feldman*

doctrine inapplicable under identical procedural circumstances because there was no

final state court judgment).  Federalism concerns are thus not implicated by Plaintiff's

request that this Court reinstate the entry of default that was made and subsequently

set aside by the state court.

　　　"When a case is removed from state court, the federal court takes the case in its

current posture and treats previously entered orders as its own." *Sawyer v. USAA Ins.*

*Co.*, 839 F. Supp. 2d 1189, 1215 (D.N.M. Mar. 8, 2012).  Therefore, the state court's order

setting aside default judgment (*doc. 7-1* at 58-59) should be treated as the Court's own.

That order does not adjudicate all of the claims in the case and is thus an interlocutory

order, which "is subject to revision at any time before the entry of [final] judgment."

*Raytheon Constructors, Inc. v. Asarco, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003) (quoting

Fed. R. Civ. P. 54(b)).  As Defendants correctly note in their briefing, the Federal Rules

of Civil Procedure do not recognize a motion for reconsideration of interlocutory

orders.  *Doc. 19* at 2; *see Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995) (explaining

that courts should construe a motion for reconsideration as either a motion to alter or

amend the judgment under Rule 59(e) or a motion seeking relief from the judgment under Rule 60(b), which apply only to orders of final judgment).   However, the Court has discretion to revise its interlocutory orders, untethered by the constraints governing Rules 59(e) and 60(b).  *Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*, 212 F. App'x 760, 765 (10th Cir. 2007) (unpublished) (citing *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005)); *see also Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991) (noting that a motion for reconsideration filed prior to final judgment "was nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment").  I will therefore address whether the Court should revise the interlocutory order setting aside default judgment.

In New Mexico, two different standards govern the setting aside of an entry of default, depending on whether a final default judgment has been entered.  *See DeFillippo v. Neil*, 51 P.3d 1183, 1185-86 (N.M. Ct. App. 2002); N.M.R.A., Rule 1-055(C); N.M.R.A., Rule 1-060(B).  In the order at issue, the state court judge correctly applied Rule 1-055(C) of the New Mexico Rules of Civil Procedure, which sets forth a "good cause" standard for setting aside an entry of default prior to entry of judgment by default.  *Doc. 7-1* at 39-44, 58-59; *see also* N.M.R.A., Rule 1-055(C).  The court's order set aside the entry of default because "New Mexico public policy clearly favors determination on the merits" and "Defendants demonstrate the existence of a valid defense, or defenses, to the

Complaint." *Doc. 7-1* at 58.  Even under the more stringent Rule 1-060 standard, these

reasons suffice to justify setting aside the entry of default.  *See Sunwest Bank of*

*Albuquerque v. Rodriguez*, 770 P.2d 533, 535 (N.M. 1989) ("[B]ecause default judgments

are disfavored and causes generally should be tried on their merits, we have counseled

trial courts to be liberal in determining the existence of grounds that satisfy Rule

60(B)").  Moreover, the order noted that Defendants had established the existence of a

valid defense, a necessary showing before relief from default judgment will be granted.

*Rodriguez v. Conant*, 737 P.2d 527, 530 (N.M. 1987).  Courts "should be liberal in

determining what is a meritorious defense and whether there are grounds for setting

aside a default judgment." *Id.*  Therefore, I recommend the Court decline to revise the

previous order setting aside entry of default and deny Plaintiff's Motion for

Reconsideration (*doc. 14*).

> **III.**        As for Plaintiff's Motion to Remand (*doc. 15*), Plaintiff missed the
>
> thirty-day deadline to file such a motion following Defendants' notice of
>
> removal.  *See* 28 U.S.C. § 1447(c).  I recommend that the Court deny his
>
> motion on that basis.  Alternatively, I recommend the Court deny the
>
> motion its merits.  Plaintiff offers no basis for remand other than
>
> Defendants' failure to appear at the June 29, 2016 state court hearing or to
>
> file any responsive pleadings to Plaintiff's Complaint in state court.  *See*
>
> *generally doc. 15*.  These are the same reasons the state court initially

granted default judgment, which it later set aside for good cause shown. *See doc. 7-1* at 31-32, 58-59. As set forth above, good cause supported the state court's decision to set aside the default judgment. In any event, the Defendants' alleged failings in state court provide no basis on which to grant Plaintiff's Motion to Remand. **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of "show[ing] 'that there is an absence of evidence to support the nonmoving party's case.'" *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.

However, summary judgment motions based upon the defense of qualified immunity are reviewed differently from other summary judgment motions, because qualified immunity is "designed to protect public officials from spending inordinate

time and money defending erroneous suits at trial." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008). Therefore, when a public official is entitled to qualified immunity, the entitlement relieves the official from bearing any of the burdens of litigation, including discovery. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). The Supreme Court "has directed the lower federal courts to apply qualified immunity broadly, to protect from civil liability for damages all officers except 'the plainly incompetent or those who knowingly violate the law,'" in order to avoid unduly inhibiting officers in performing their official duties. *Wilson v. City of Lafayette*, 510 F. App'x 775, 780 (10th Cir. 2013) (unpublished) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001)). The qualified immunity standard allows government officials "ample room for mistaken judgments," shielding them from liability for reasonable error. *Applewhite v. U.S. Air Force*, 995 F.2d 997, 1000 (10th Cir. 1993) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). Thus, qualified immunity is "applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

When a defendant moves for qualified immunity on an excessive force claim, the burden shifts to the plaintiff to show (1) "that the force used was impermissible (a constitutional violation)[,]" and (2) "that objectively reasonable officers could not have thought the force constitutionally permissible (violates clearly established law)." *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007); *see also Medina*, 252 F.3d at 1128. This

is a "strict two-part test" that must be met before the defendant asserting qualified immunity again "bear[s] the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark*, 513 F.3d at 1222. The Court may address the two prongs of the test in any order. *Pearson*, 555 U.S. at 236.

Determining whether the allegedly violated right was "clearly established" depends on whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quotation omitted). While the plaintiff need not locate "a case directly on point," nevertheless "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Whether the motion for summary judgment is based on qualified immunity or not, the Court decides the motion on the basis of the facts as construed in the light most favorable to the non-moving party. Consequently, it must keep in mind three principles. First, the Court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial.

*See Liberty Lobby*, 477 U.S. at 249.  "An issue is 'genuine' if there is sufficient evidence on

each side so that a rational trier of fact could resolve the issue either way.  An issue of

fact is 'material' if under the substantive law it is essential to the proper disposition of

the claim."  *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal

citation omitted).  Second, the Court must resolve all reasonable inferences and doubts

in favor of the non-moving party, and construe all evidence in the light most favorable

to the non-moving party.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014); *see also Riggins

v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (noting that courts generally "accept the

facts as the plaintiff alleges them" when considering whether a plaintiff has overcome

defendant's assertion of qualified immunity at the summary judgment stage).

However, "a plaintiff's version of the facts must find support in the record" at the

summary judgment stage.  *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

Third, the court cannot decide any issues of credibility.  *See Liberty Lobby*, 477 U.S. at

255.  "[T]o survive the . . . motion, [the non-movant] need only present evidence from

which a jury might return a verdict in his favor."  *Id*. at 257.

The Court is required to liberally construe the filings of a *pro se* plaintiff and to

hold them to a less stringent standard than formal pleadings drafted by lawyers.  *Hall v.

Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Such a requirement entails the

responsibility of a court to read the pleadings to state a valid claim on which a *pro se*

plaintiff could prevail if such a reading is reasonable, "despite the plaintiff's failure to

cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* However, the Court does not assume the role of advocate for a *pro se* plaintiff. *Id.* Accordingly, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).

### B. Undisputed Facts

The Local Rules regarding Summary Judgment procedures require that a non-moving party's response to a Motion for Summary Judgment must contain:

> . . . a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted. The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion. Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies.

D.N.M.LR-Civ. 56.1(b). Plaintiff did not file a response to Defendants' summary judgment motion, but Plaintiff's own Motion for Summary Judgment contains a list of undisputed material facts and directly disputes some of the facts included in Defendants' motion. *See generally doc. 29*. Construing Plaintiff's *pro se* filings liberally, the Court has ruled that it will treat his summary judgment motion as a response to

Defendants' summary judgment motion. *See doc. 32.* The recitation below therefore omits facts specifically controverted by Plaintiff in his motion insofar as he has pointed to particular portions of the record to support his opposition. The undersigned considers all other material facts enumerated in Defendants' Motion for Summary Judgment to be undisputed. *See doc. 23 at 1-3.*

1.  Plaintiff was arrested for the offenses of trafficking of a controlled substance and felon in possession of a firearm on January 6, 2015, at Plaintiff's residence in Albuquerque, New Mexico. *Doc. 22-1* at 1, 6-9.

2.  Plaintiff's arrest resulted from a narcotics investigation conducted by Defendant Detective Garcia, which was initiated approximately four weeks prior to the arrest when a confidential source informed Defendant Garcia that Plaintiff sold narcotics. *Doc. 22-1* at 6; *doc. 23* at 2.

3.  During his investigation, Defendant Garcia personally observed Plaintiff engaging in activity consistent with trafficking in controlled substances on several occasions, including activity occurring at his residence. *See doc. 22-1* at 6-9.

4.  Defendant Garcia facilitated a purchase of methamphetamine by the confidential source from Plaintiff, and personally witnessed what appeared to be a hand-to-hand narcotics transaction between them. *Id.* at 6.

5.   The substance that the confidential source purchased from Plaintiff field-
     tested positive as methamphetamine.  *Id.*

6.   Defendant Garcia submitted an affidavit for a warrant to search Plaintiff's
     residence to Judge Brett R. Lovelace of the Second Judicial District Court
     on December 31, 2014, and the warrant was approved on the same date.
     *Docs. 22-2, 22-3.*

7.   Defendant Garcia and other personnel of Defendant Bernalillo County
     Sheriff's Department executed the search warrant at Plaintiff's home on
     January 6, 2015.  *Doc. 22-1* at 8.

8.   For safety reasons, the officers executing the search warrant disabled
     Plaintiff's home surveillance camera prior to approaching the residence.
     *Doc. 22-4* at 1.

9.   Defendant Bernalillo County Sheriff's Department personnel executing
     the warrant knocked and announced themselves as law enforcement
     officers and requested entry to the residence, but Plaintiff did not answer
     the door.  *Doc. 22-1* at 8.

10.  Unable to gain consensual entry, the officers forced entry into the home,
     where they found Plaintiff locked inside his bedroom.  *Id.*

11.  The officers seized various items from Plaintiff's home in the course of
     executing the search warrant, including methamphetamine, heroin, digital

scales, plastic bags consistent with narcotics sales, an ammunition clip loaded with eight .380 rounds, a .380 handgun, and a ballistic vest. *Doc. 22-5*; *doc. 23* at 3.

12. Plaintiff was thereafter arrested on charges of trafficking and distribution of a controlled substance and being a felon in possession of a firearm, and he was transported to the Sheriff's Office for booking. *Doc. 22-1* at 1, 8.

13. Palmela Ortiz-Reed, a paralegal employed by the County of Bernalillo, signed a sworn affidavit that there is no record in the Tort Claims Notice database for the County of Bernalillo of any Notice of Tort Claim filed by Plaintiff regarding the NMTCA claim in his Complaint. *Doc. 22-7*.

**C. Analysis**

Plaintiff claims the search warrant for his home was "unconstitutionally obtained and executed" because it was obtained without exigent circumstances, and that his Fourth, Fifth, and Fourteenth Amendment rights were violated in the process of the search. *Doc. 1-1* at 2. Plaintiff further alleges that Defendant Garcia "perjured himself on affidavits for the search warrant," and that the affidavit did not meet the probable cause standard due to its reliance on occurrences that "appeared" to be narcotics transactions, the credibility of a "known drug addict," and "double [hear]say." *Doc. 29* at 3.

Plaintiff also seeks damages under the NMTCA due to the fact that the surveillance camera and three doors to his home were broken, and several items of personal property were stolen as a result of the house having been left unsecured for several hours after the arrest took place. *Doc. 1-1 at 2.* In response to an affidavit produced by Defendants showing that Plaintiff failed to file a Notice of Tort Claim as required by the NMTCA, Plaintiff alleges that the government official who prepared and signed that affidavit is lying under oath. *Doc. 29 at 2.* Defendants argue that they are entitled to summary judgment because Plaintiff has failed to state any cognizable constitutional claim and failed to file the requisite notice for his state law NMTCA claim. For the reasons explained below, I recommend that the Court grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

> i.    *Defendant Garcia is entitled to summary judgment on the basis of qualified immunity.*

Defendant Garcia has moved for summary judgment on the basis of qualified immunity. *Doc. 23 at 4-10.* Once an individual defendant such as Defendant Garcia asserts qualified immunity, the burden shifts to the plaintiff to produce sufficient evidence to establish two prongs: that the defendant's alleged conduct violated the law, and that the law violated was clearly established when the violation occurred. *See Pueblo Neighborhood Health Ctrs., Inc., v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988). Plaintiff here has made no effort to cite to clearly established law showing that the alleged conduct of Defendant Garcia violated his Fourth, Fifth, or Fourteenth

15

Amendment rights.  *See generally docs. 29, 30.*  Instead, Plaintiff cites to the New Mexico

state laws governing the offenses of perjury and conspiracy and to the Federal Rule of

Evidence governing hearsay.[1]  *Doc. 29* at 2-3.

Plaintiff attempts to meet his burden on his Fourth Amendment claim by citing

to law governing the contours of the Fourth Amendment right against unreasonable

searches and seizures.  *See id.* at 6, 10 (citing to *South Dakota v. Opperman*, 428 U.S. 364,

388 n.6 (1976) (Marshall, J., dissenting); *Mapp v. Ohio*, 367 U.S. 643 (1961); and quoting

without citing *Camara v. Mun. Court of City and Cty. of S.F.*, 387 U.S. 523, 528 (1967)).

However, none of the jurisprudence on which Plaintiff relies pertains to the facts

---

[1] In his response, Plaintiff also raises the issue of ineffective assistance of counsel for the first time, and alludes to a litany of other possible procedural defects tainting his state court conviction.  *See doc. 29* at 7-9, 11 (noting a prosecutor's duty to ensure a fair trial, mentioning the Sixth Amendment rights to counsel and to be read *Miranda* rights, arguing the state court trial judge had a conflict of interest requiring recusal because he signed the search warrant, and discussing the rules governing § 2254 and § 2255 proceedings).  All such claims are properly suited to a § 2254 motion attacking his state sentence, rather than a § 1983 suit seeking damages from the state actors responsible for the alleged constitutional violations leading up to his arrest.  *See Preiser v. Rodriguez*, 411 U.S. 475, 487-90 (1973).  If the Court were to construe Plaintiff's newly introduced allegations as a claim that his conviction should be vacated due to ineffective assistance of counsel or other procedural defects, Plaintiff's claims would be barred altogether by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).  The *Heck* rule requires that "where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of available state . . . habeas[] opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam).  Upon review of Plaintiff's Complaint, however, it appears that Plaintiff seeks damages rather than the overturning of his conviction from the Court, and that his claims are thus properly construed as arising under § 1983.  *See doc 1-1* at 3 (Plaintiff's prayer for relief seeks revocation of "law enforcement certifications" and a "disciplinary report" filed against Defendant Garcia, and $25,000.00 from the municipal Defendant); *see also United States v. Nelson*, 465 F.3d 1145, 1149 (10th Cir. 2006) ("It is the relief sought . . . that determines whether the pleading is a § 2255 motion"); *Holly v. Gotcher*, 427 F. App'x 634, 635-36 (10th Cir. 2011) (unpublished) (characterizing a plaintiff's motion as arising under § 1983 where the plaintiff sought damages rather than asking to have his sentence vacated).  Therefore, I recommend that the Court characterize Plaintiff's claims as arising under § 1983 and disregard his superfluous references to ineffective assistance of counsel and other procedural defects first mentioned in his response to Defendants' summary judgment motion.

underlying his case.  For instance, the facts of *Opperman* involve the warrantless search of an automobile, and the portion to which he cites is not only from the dissenting opinion but also pertains to the permissible limits of such a search, disallowing closer examination of the contents of closed containers or personal papers.  *See* 428 U.S. at 388 n.6 (Marshall, J., dissenting); *id.* at 380 n.7.

Plaintiff's citation to *Mapp* is likewise unavailing, as Plaintiff merely cites to that case's quotation of the text of the Fourth Amendment itself.  *See doc. 29* at 6; 367 U.S. 643, 646 n.4 (1961).  Such a mere conclusory allegation that Defendant Garcia's conduct violated the clearly established law of the Fourth Amendment is at an impermissibly broad level of generality and does not satisfy Plaintiff's burden.  *See Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987); *Ashcroft*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality.").  The directive not to interpret "clearly established law" at a high level of generality is also fatal to Plaintiff's reliance on the language from *Camara* that "[t]he basic purpose of [the Fourth] Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."  387 U.S. at 528.  These citations to broad constitutional principles, without reference to the facts of any particular case, do not suffice to meet Plaintiff's burden to show that it is "beyond debate" that Defendant Garcia's actions violated any of

Plaintiff's constitutional rights.  *Ashcroft*, 563 U.S. at 741.  "Unless such a showing is made, the defendant prevails."  *Pueblo*, 847 F.2d at 646.

Plaintiff's claims involve (i) the dismantling of a surveillance camera pursuant to the execution of a warrant; (ii) the damaging of doors during the execution of a search warrant where Plaintiff locked himself in a bedroom rather than answer the door; and (iii) the damage and theft of property allegedly due to the officers leaving the house unsecured upon Plaintiff's arrest.  Plaintiff cites to no cases clearly establishing that any of these circumstances amount to a constitutional violation, as is required to overcome Defendant Garcia's qualified immunity defense.  *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (explaining that law is not "clearly established" except where actions taken under "similar circumstances" were held to be unconstitutional in a specific case with precedential value).  Therefore, as Plaintiff has failed to meet the "heavy two-part burden" of overcoming Defendant Garcia's qualified immunity defense, I recommend that the Court dismiss the claims against Defendant Garcia on the basis of qualified immunity.  *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

> ii.    *Defendant Bernalillo County Sheriff's Department is entitled to summary judgment because no constitutional violation has been established.*

Municipalities cannot be held liable for the acts of their employees under 42 U.S.C. § 1983 on the basis of a *respondeat superior* theory of liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Bryson v. City of Okla. City*, 627 F.3d 784, 788

(10th Cir. 2010). Instead, "[a] plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional violation." *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998). In order to meet this burden, a plaintiff must first "identify a government's policy or custom that caused the injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (internal citation omitted). The plaintiff is then required to show "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* The Tenth Circuit has distilled these requirements into three specific elements: "(1) official policy or custom[;] (2) causation[;] and (3) state of mind." *Id.*

"[U]nlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993). It is true that "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Green v. Post*, 574 F.3d 1294 (10th Cir. 2009) (quoting *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006)). However, it is possible for an officer to escape liability on the basis of qualified immunity and for the officer's employing municipality to nevertheless be liable for a constitutional violation. *See Bass v. Pottawatomie Cty. Pub. Safety Ctr.*, 425 F. App'x 713, 717-18 (10th Cir. 2011); *Boyd v.*

19

*Montezuma Cty. Sheriff's Office*, No. 15-CV-00101-MEH, 2015 WL 2329061, at *1 (D. Colo.

May 13, 2015); *Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1263 n.4 (10th

Cir. 2009) ("We recognize that judgment in favor of the individual Defendants in their

personal capacities would not necessarily bar a claim against [the municipal employer]

(or the individual defendants in their official capacities).").  Therefore, I will now

address whether Plaintiff has made a sufficient factual showing to create a genuine

issue of material fact as to whether employees of the municipal Defendant committed

any constitutional violations in this case, as required to establish municipal liability

under § 1983.  *See Myers*, 151 F.3d at 1316 (10th Cir. 1998).[2]

### a. Plaintiff's Fourteenth Amendment claim

In his Complaint, Plaintiff avers that the search warrant underlying the search of

his residence was "unconstitutionally obtained and executed . . . .  My 4th[,] 5th[,] and

14th Amendment[] [rights] were violated."  *Doc. 1-1* at 2.  In his response to Defendants'

Motion for Summary Judgment, Plaintiff includes further detail as to the source of his

Fourteenth Amendment claim, referring to "[t]he 'Fourth Amendment,' made

applicable to the states through the 'Fourteenth Amendment.'"  *Doc. 29* at 6.  Plaintiff

thus may have cited to the Fourteenth Amendment merely to emphasize to the Court

---

[2] As noted above, establishing municipal liability requires proof of both a constitutional violation and a policy/custom which was the moving force behind the violation.  The summary judgment record contains no evidence of such a policy/custom.  *See generally docs. 1-1, 22, 23, 28, 29*.  However, because Defendants did not make that argument and, in the context of a non-qualified immunity summary judgment motion, the burden is on the municipal Defendant to demonstrate the absence of a material fact, the undersigned does not rely on this apparent deficiency.

that the protections of the Fourth Amendment have been incorporated against the states, and not as an independent constitutional claim under the Fourteenth Amendment.

Construing his filings liberally, Plaintiff may be attempting to state a claim under the Due Process clause of the Fourteenth Amendment, which protects against governmental deprivations of "life, liberty, or property" without due process of law. U.S. CONST. amend. XIV; *see Baker v. McCollan*, 443 U.S. 137, 145 (1979).  For example, as discussed above, Plaintiff quotes the language of *Camara* explaining that the purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."  387 U.S. at 528.  The arbitrary deprivation of an individual's property right also implicates the "substantive component of the Due Process clause of the Fourteenth Amendment."  *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999).  However, where a particular Amendment "'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing' such a claim."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  *See doc. 23* at 10.

Insofar as Plaintiff is relying on the procedural due process guarantee of the Fourteenth Amendment to argue that the property damage that occurred during the

lawful search was unconstitutional, such a claim is also properly characterized as arising under the Fourth Amendment rather than the Fourteenth.  *See Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 ("The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of . . . property in criminal cases"); *cf. United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 49-52 (1993).

Thus, Plaintiff states no independent Fourteenth Amendment claim, and, following *Albright* and *Graham*, it is therefore proper to address the alleged unconstitutional conduct through the lens of the relevant Fourth Amendment jurisprudence.

### b. Plaintiff's Fourth Amendment claim

Plaintiff alleges that Defendant Garcia "executed a search warrant that was obtained without exigent circumstances[,] which violates [his] civil rights."  *Doc. 1-1* at 2.  However, the existence of exigent circumstances is not a requirement for obtaining a search warrant.  In fact, exigent circumstances are required only for certain **warrantless** searches.  *See, e.g., Kirk v. Louisiana*, 536 U.S. 635, 638 (2002).  Rather, a warrant may issue upon a showing of probable cause that contraband or evidence is located in the particular place to be searched.  U.S. CONST. amend. IV ("no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized"); *see also United States v. Ventresca*, 380 U.S. 102, 107 (1965); *Illinois v. Gates*, 462 U.S. 213, 230 (1983).

Probable cause is defined as "a reasonable ground for belief of guilt . . . [which] means less than evidence which would justify condemnation or conviction[.]" *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (internal quotations and citations omitted). "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* at 175-76 (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)) (internal quotations and alterations omitted). Whether such probable cause exists must be determined by considering the totality of the circumstances. *Gates*, 462 U.S. at 238. Moreover, an affidavit for a search warrant may be based on hearsay, "so long as a substantial basis for crediting the hearsay is presented." *Id.* at 241-42 (quoting *Jones v. United States*, 362 U.S. 257, 269 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 85 (1980)).

Here, the search of Plaintiff's home was executed pursuant to a search warrant issued by a Second Judicial District Court Judge upon review of the affidavit submitted by Defendant Garcia. *See doc. 22-3*. Because a search warrant "provides the detached scrutiny of a neutral magistrate," the Supreme Court has "expressed a strong preference for warrants and declared that in a doubtful or marginal case a search under a warrant

may be sustainable where without one it would fall." *United States v. Leon*, 468 U.S. 897,

913-14 (internal quotations omitted).  This preference "is most appropriately effectuated

by according great deference to a magistrate's determination" that the affidavit

supporting the warrant establishes probable cause.  *Id.* at 914 (internal quotations

omitted).  Such deference to a magistrate's finding of probable cause "is not

boundless[,]" however, and "does not preclude inquiry into the knowing or reckless

falsity of the affidavit on which [the] determination [that probable cause exists] was

based." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 165 (1978)).

Plaintiff alleges that Defendant Garcia committed perjury in his affidavit for the

search warrant.  *See doc. 29* at 2.  Such an allegation, if true, might constitute a violation

of Plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures.

*See Snell v. Tunnell*, 920 F.2d 673, 598 (10th Cir. 1990).  The Tenth Circuit has explained

that the Fourth Amendment's "prohibition against unreasonable searches and seizures

is implicated" where (1) a plaintiff shows "that the allegations [contained in an affidavit

underlying a warrant] were fabricated" and (2) the defendant officers who included

these falsehoods in an affidavit "knew that such allegations were untrue[,]" but

nevertheless "engaged in a deliberate course of conduct, complete with false

information, designed to gain entry into" the place to be searched.  *Id.*

However, a review of the factual basis of Plaintiff's allegation that Defendant

Garcia intentionally fabricated information to obtain the search warrant reveals that

Plaintiff's claim has no merit.  In his response to Defendants' summary judgment

motion, Plaintiff attached a heavily annotated copy of the affidavit in question

indicating which aspects he contends are baseless.  *See doc. 29* at 20-23.  Plaintiff objects

that: (1) Defendant Garcia stated that he had "reason to believe" rather than "proof"

that there may be narcotics and other items related to narcotics trafficking on the

premises to be searched; (2) Defendant Garcia stated that he observed "what appeared

to be a hand to hand narcotics transaction;" (3) the affidavit in its entirety was "based

on 'appeared' and on the credibility of a known drug addict . . . [which is] double

[hear]say" and is "not probable cause nor exigent circumstances;" (4) the affidavit is

"not specific what is to be searched nor seized;" (5) the affidavit contained a

contradiction in that it stated that the confidential source had "firsthand knowledge"

that Plaintiff was trafficking narcotics out of his residence, but later stated that the

source informed Defendant Garcia that Plaintiff "resides somewhere in Westgate;" and

(6) the affidavit states that Plaintiff "has a lengthy criminal arrest history in Bernalillo

County for various offenses including trafficking narcotics[,]" which Plaintiff contends

is untrue.

    These allegations are clearly insufficient to show the "deliberate falsehood or

reckless disregard for truth,  [which is] needed to challenge the presumed validity of an

affidavit supporting a search warrant[.]"  *Snell*, 920 F.2d at 698 (citing *Franks*, 438 U.S. at

171).  As discussed above, "reason to believe" that evidence of narcotics trafficking

would be found in Plaintiff's residence is all that is required to meet the probable cause standard—absolute proof is not. *Brinegar*, 338 U.S. at 175-76. So, too, is hearsay an acceptable source to establish probable cause for a search warrant, so long as there is a "substantial basis" to credit the hearsay. *Gates*, 462 U.S. at 241-42. It is undisputed that Defendant Garcia personally witnessed a hand-to-hand transaction occur between the confidential source and Plaintiff, and that the substance purchased by the confidential source during that interaction field-tested positive for methamphetamine. *See doc. 22-1* at 6. It is also undisputed that Defendant Garcia personally observed several other hand-to-hand transactions occurring between Plaintiff and other parties, as well as significant vehicle traffic at Plaintiff's home over the course of two weeks by visitors who usually stayed for three to five minutes at a time, which, based on Defendant Garcia's experience and training, was indicative of narcotics sales. *See id.* at 6-9. Thus, the hearsay to which Plaintiff objects was corroborated by substantial evidence, and the judge had good reason to credit it. The undisputed facts in this case establish that there was in fact probable cause to issue the search warrant.

Additionally, the alleged contradiction identified by Plaintiff does not necessarily constitute a contradiction at all, as it is possible for a person to witness the trafficking of narcotics out of a person's residence without recalling the specific address of the residence. Moreover, Plaintiff furnishes no factual basis for the claim that Defendant Garcia's assertion in the affidavit that Plaintiff has been arrested in the past for various

offenses, including trafficking narcotics, is untrue.  *See generally docs. 1-1, 29.*  Even

assuming *arguendo* that the statement regarding Plaintiff's criminal history is false, there

"remains sufficient content in the warrant affidavit to support a finding of probable

cause," which would render any search executed pursuant to the warrant lawful.

*Franks*, 438 U.S. at 171-72.  Moreover, these potential contradictions or incorrect

statements do not rise to the level of a "deliberate falsehood" required to challenge the

presumption of validity with respect to the affidavit supporting a search warrant.  *See*

*Snell*, 920 F.2d at 698; *Franks*, 438 U.S. at 171.  Additionally, it is beyond reasonable

dispute that the affidavit is sufficiently specific as to the items to be searched or seized.

*See doc.* 22-2 at 1-2.[3]

    Finally, Plaintiff alleges in his Complaint that (1) his property was destroyed

during the search and (2) other property was stolen from his residence following the

search due to the home being left unsecured and unoccupied following Plaintiff's arrest

---

[3] The list of such items reads as follows: "Meth and other controlled substances, in any form, in an unknown quantity, including but not limited to Meth; paraphernalia used for the packaging, distribution, weighing, smoking, cooking, possession, use and/or sale of Meth and other controlled substances. Records, which reflect the identities of persons found at the above-described premises, in the possession of the above Meth and/or other controlled substances.  United States currency, and/or any firearms, weapons, and/or other protective devices used of intended for use in the trafficking, sale, possession and/or manufacturing of any controlled substance and records which reflect the purchase of any of the above listed items or as they pertain to the above listed items, including, but not limited to: Receipts, invoices, work orders, and purchase orders."  *Doc. 22-2* at 1.  The descriptions of the residence and vehicle to be searched for such items are similarly specific, including such details as the type of roof, the color and type of building materials of various parts of the home, the direction in which the doors and windows face, that the physical address is marked in black above the front door, and the color, make, model, year, license plate number, and VIN of the vehicle.  *See id.*

and a house key being left outside on the hood of a vehicle. *Doc. 1-1* at 2. Specifically, Plaintiff alleges that his security cameras were removed and three doors and two television sets were broken during the search, and that a stereo system and jewelry were stolen from the residence after the search. *Id.*; *doc. 29* at 3. "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful[.]" *United States v. Ramirez*, 523 U.S. 65, 71 (1998). However, property damage caused during the execution of a valid search warrant is not per se unreasonable, as "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 257 (1979). The Court should apply the "general touchstone of reasonableness which governs Fourth Amendment analysis" in analyzing the "method of execution of the warrant." *Ramirez*, 523 U.S. at 71. Applying that reasonableness standard is a fact-specific inquiry "requir[ing] careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396.

Here, the officers executing the search warrant disabled a surveillance camera before approaching the front door, and then knocked and announced themselves prior to initiating forced entry. *Doc. 22-1* at 8; *doc. 22-4* at 1. Once inside, the officers found that Plaintiff had locked himself inside his bedroom. *See id.* The officers then detained Plaintiff while they searched his home in accordance with the warrant, recovering methamphetamines, heroin, a firearm, and other items contemplated by the warrant.

Plaintiff was then arrested.  *See doc. 22-1* at 8; *doc. 22-5*.  "The knock-and announce rule gives individuals the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry."  *Hudson v. Michigan*, 547 U.S. 586, 594 (2006) (internal quotations omitted).  "[W]here the officers knock[] and announce[] their presence, and forcibly enter[] after a reasonable suspicion of exigency ha[s] ripened, their entry satisfie[s] . . . the Fourth Amendment, even without refusal of admittance."  *United States v. Banks*, 540 U.S. 31, 43 (2003).  The Tenth Circuit has explained that "a constructive refusal occurs, giving police the right to enter by force, where the occupants do not admit the officers within a reasonable period of time."  *United States v. Gallegos*, 314 F.3d 456, 459 (10th Cir. 2002) (internal quotations omitted).  The amount of time that is considered reasonable to wait before forcing entry "depends on the particular facts and circumstances of each case."  *United States v. Jenkins*, 175 F.3d 1208, 1213 (10th Cir. 1999).  Relevant facts to consider include whether exigent circumstances exist, which may justify a relatively short waiting period, and whether the warrant is executed in the middle of the day, which also reduces the reasonable amount of time officers are required to wait.  *See id.* at 1214, 1215.

There are no facts in the record regarding the precise amount of time the officers waited before initiating forced entry, nor does Plaintiff aver that the officers waited for an insufficient amount of time.  *See generally docs. 1-1, 29*.  Therefore, Plaintiff has not pointed to any evidence creating a genuine dispute of material fact as to the

reasonableness of the officers' forced entry, and the damage to the locked doors of the

home thus cannot be said to constitute "[e]xcessive or unnecessary destruction of

property" rising to the level of a Fourth Amendment violation.  *See Ramirez*, 523 U.S. at

71.

　　　　Moreover, removal of the surveillance cameras was necessary to ensure officer

safety in executing the search warrant, as allowing Plaintiff the ability to anticipate and

view the officers' movements could place them in serious danger of ambush.  *See, e.g.*,

*Maryland v. Buie*, 494 U.S. 325, 333 (1990) (explaining that "[t]he risk of danger in the

context of an arrest in the home is as great as, if not greater than, it is in an on-the-street

or roadside investigatory encounter" and that "[a]n ambush in a confined setting of

unknown configuration is more to be feared than it is in open, more familiar

surroundings.").  It was therefore reasonable for the officers to attempt to neutralize

"the disadvantage of being on [their] adversary's turf" by disabling the surveillance

cameras before approaching the residence.  *Id.*

　　　　In addition, Plaintiff does not assert that the officers personally stole his jewelry

and stereo system, but rather that they left the front door of the home unsecured and

left a key to the unoccupied house outside.  *See doc. 1-1* at 2.  However, "if the property

damage results from mere negligence, no constitutional violation is demonstrated."

*Caviness v. Johnson*, 614 F. Supp. 2d 1246, 1251 (W.D. Okla. 2008) (citing *Bergquist v. Cty.

of Cochise*, 806 F.2d 1364, 1369 (9th Cir. 1986)).  While the officers may have been

negligent to leave the home open to intrusion by third parties, such negligence does not demonstrate a violation of the Constitution.

It is unclear whether the televisions were broken by the officers or discovered broken following the search. *See doc. 1-1* at 2. Viewing the facts in the light most favorable to Plaintiff, and assuming *arguendo* that the officers broke the televisions, damage that occurs incidental to a search is not a constitutional violation. *Lemmons v. Waters*, 2014 WL 5419237, at *5 (N.D. Okla. Oct. 23, 2014) (citing *Ramirez*, 523 U.S. at 71). In *Lemmons*, the court granted summary judgment to the defendants where the plaintiff claimed that the officers executing a search warrant in his home "stomped and destroyed his home security system, cameras, monitor, and continuous feed recording equipment . . . . [and] antique jewelry, diamonds, gold, and cash, totaling approximately $250,000 in value, were stolen by [the defendants] during their 'rampage.'" *Id.* The court explained that "[d]espite [the plaintiff's] characterization of [the defendants'] search as a 'rampage,' he offers nothing but his conclusory allegations to support his claim that the search violated his constitutional rights" and failed to "demonstrate, or even allege, that [the defendants] acted with malice." *Id.* at *6.

Similar to the facts in *Lemmons*, the officers here were searching for drugs, drug paraphernalia, currency, weapons, and any records containing evidence of Plaintiff's narcotics trafficking, computerized or otherwise. *See doc. 22-2* at 1. And similar to the plaintiff in *Lemmons*, Plaintiff has furnished no evidence supporting the claim that the

search conducted was unnecessarily thorough to fulfill its purpose, as the scope of the search warrant was broad and extended to the entire home and any vehicles on the property.  *See id; see also Lemmons*, 2014 WL 5419237, at \*6.  "[A] warrant to seize items 'also provides authority to open closets, chests, drawers, and containers' in which those items might be found."  *Id.* (quoting *United States v. Ross*, 456 U.S. 798, 820-21 (1982)).  It is possible that the televisions were broken as a result of forced entry into Plaintiff's bedroom, or otherwise removed from the walls to search for compartments or safes where the items listed in the warrant could be hidden.  Even viewing the facts in the light most favorable to Plaintiff, he has simply made no allegations that the officers caused anything other than property damage that was merely incidental to a reasonable and lawful search, which is permissible under the Fourth Amendment.

Plaintiff's assertions do not create a genuine issue of material fact as to whether Defendant Garcia or the other officers employed by the municipal Defendant violated Plaintiff's Fourth Amendment rights.  *See Liberty Lobby*, 477 U.S. at 249-50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted).  I therefore recommend that the Court find that no reasonable jury could find a violation of the Fourth Amendment under the facts alleged.

c. Plaintiff's Fifth Amendment claim

The factual basis offered by Plaintiff to support his Fifth Amendment claim is sparse.  *See generally docs. 1-1, 29*.  Defendants state that Plaintiff appears to be invoking

the protection of the takings clause, due to the seizure of various items from the residence, the disabling of the security camera, and the damage caused by the forced entry. *See doc. 23* at 9-10. However, as discussed above, these allegations go to the reasonableness of the search and are therefore properly analyzed under the Fourth Amendment.

To the extent Plaintiff is relying on the Due Process clause of the Fifth Amendment, that clause applies only to the actions of federal officials, as opposed to state officials. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *see also S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n. 21 (1987); *Greene v. Impson*, 530 F. App'x 777, 779 n.3 (10th Cir. 2013). It is thus inapplicable to the facts of this case.

Plaintiff has failed to establish any constitutional violation in this case. Therefore, I recommend that the Court find Defendant Bernalillo County Sheriff's Department is entitled to summary judgment due to Plaintiff's failure to establish sufficient evidence from which a reasonable jury might find that his constitutional rights were violated. *See Liberty Lobby*, 477 U.S. at 248-49.

> iii.  *Plaintiff's state law claims under the NMTCA should be dismissed due to non-compliance with the Act's notice requirement.*

The NMTCA waives immunity from tort liability for law enforcement officers accused of committing certain personal torts while acting within the scope of their duties.  N.M.S.A. § 41-4-12.  However, in order to seek damages under the NMTCA, a plaintiff is required to "cause to be presented to . . . the county clerk of a county for claims against the county . . . within ninety days after an occurrence giving rise to [the NMTCA] claim[,] . . . a written notice stating the time, place and circumstances of the loss or injury."  N.M.S.A. § 41-4-16(A).  If a plaintiff fails to provide such notice, "[n]o suit or action for which immunity has been waived under the [NMTCA] shall be maintained and no court shall have jurisdiction to consider" such a claim, unless the governmental defendant had actual notice of the occurrence giving rise to the action.  *Id.* § 41-4-16(B).

Here, Palmela Ortiz-Reed, a paralegal employed by the County of Bernalillo, has signed a sworn affidavit stating that no such notice was filed by Plaintiff.  *Doc. 22-7.*  In response, Plaintiff accuses Ms. Ortiz-Reed of "falsifying [an] affidavit[] under oath." *Doc. 29* at 2.  This dispute, however, is better characterized as a misunderstanding than as a genuine dispute of material fact.  Plaintiff appears to have conflated the requisite "Notice of Tort Claim" referred to in Ms. Ortiz-Reed's affidavit with Defendants' notice, by way of receipt of the complaint and summons, of the present lawsuit when it was first filed in state court.  *See doc. 29* at 2, 12, 13, 29.

In asking the state court to overturn the entry of default, Defendants submitted affidavits in state court swearing that they were not served with a summons or complaint, which explains why they failed to file a response. *See doc. 7-1* at 45-48. Andrea Gonzales, an administrative officer employed by the Sheriff's Office, swore an affidavit to that effect on behalf of Defendant Bernalillo County Sheriff's Office. *See id.* at 47-48. Plaintiff attached Ms. Gonzales's affidavit to his response to Defendants' summary judgment motion, and wrote "[perjury] under oath" in reference to the statement that the Sheriff's Office had no record of receiving the summons and complaint. *Doc. 29* at 13. Plaintiff likewise marked the statement in Ms. Ortiz-Reed's affidavit that there was no record in the Tort Claims Notice database of his tort claims in this case as "[perjury] under oath." *See id.* at 29. Additionally, Plaintiff's response to Defendants' summary judgment motion cites to the New Mexico law governing the offense of conspiracy, and immediately thereafter argues that "two . . . government officials which work for [Defendant] Bernalillo County Sheriff's Office, Andrea Gonzales . . . and . . . Palmela Ortiz-Reed, paralegal . . . are falsifying affidavits under oath." *Id.* at 2.

Taken together, Plaintiff's allegations that Ms. Ortiz-Reed and Ms. Gonzales are both employees of the Bernalillo County Sheriff's Office and that they committed

conspiracy indicate Plaintiff's misunderstanding as to Ms. Ortiz-Reed's identity[4] and the facts contained in her affidavit.  Further supporting this conclusion is Plaintiff's continuing focus in all of his filings on the decision below to set aside the entry of default that was entered in his favor, a result that was based in part on Defendants' claim that they never received the complaint and summons.  *See docs. 14, 15, 27, 28, 29*. While Plaintiff accuses both Ms. Ortiz-Reed and Ms. Gonzales of wrongdoing, none of his allegations demonstrate that he filed the requisite Notice of Tort Claim in order for his claim under the NMTCA to proceed.

Plaintiff has failed to furnish any factual basis, beyond mere conclusory allegations, to support the claim that he filed the requisite Notice of Tort Claim within ninety days of the underlying occurrence.  Therefore, I recommend that the Court dismiss his claim under the NMTCA, because the Court has no jurisdiction to consider such a claim absent the requisite notice.  *See* N.M.S.A. § 41-4-16.

IV.    CONCLUSION

For the foregoing reasons, I recommend that the Court DENY Plaintiff's Motion for Reconsideration (*doc. 14*) and Motion to Remand (*doc. 15*).  I also recommend that Plaintiff's Motion for Summary Judgment (*doc. 29*) be DENIED as a stand-alone motion as it has been construed as a Response to Defendants' Motion for Summary Judgment. *See doc. 32*.  I further recommend that the Court find that: (1) Plaintiff's federal claims

---

[4] As noted, Ms. Ortiz-Reed does not work for the Sheriff's Office, but rather works for the County of Bernalillo.

against Defendant Garcia in his individual capacity are barred by qualified immunity;

(2) Plaintiff's federal claims against Defendant Bernalillo County Sheriff's Department

should be dismissed because Plaintiff failed to establish a constitutional violation; and

(3) Plaintiff's state law claims under the New Mexico Tort Claims Act should be

dismissed due to Plaintiff's failure to comply with the Act's notice requirement.

Therefore, I recommend that the Court GRANT Defendants' Motion for Summary

Judgment (*doc. 23*) and DISMISS Plaintiffs' claims with prejudice.


_____
GREGORY B. WORMUTH
United States Magistrate Judge

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**